UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY and MICHELLE BAIRD, | ) |
| Plaintiffs, | ) |
| v. | ) No. 4:11 CV 1589 DDN |
| DOLGENCORP, L.L.C. and DOLGENCORP, INC., | ) |
| Defendants and, Third Party Plaintiffs, | ) |
| v. | ) |
| LINCOLN COUNTY SHOPPING CENTER, L.L.C., | ) |
| Third Party Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendants and third party plaintiffs Dolgencorp, L.L.C., and Dolgencorp, Inc. for partial summary judgment against third party defendant Lincoln County Shopping Center, L.L.C. (Doc. 85.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 28.) Oral argument was heard on November 15, 2012.

**I. BACKGROUND**

On August 24, 2011, plaintiffs Gregory and Michelle Baird commenced this action against defendants Dolgencorp, L.L.C., Dolgencorp, Inc., and Lincoln County Shopping Center, L.L.C., alleging that defendants caused plaintiff Gregory Baird (Baird) physical injury on November 23, 2007. (Doc. 1.) Their complaint alleges the following. Defendants Dolgencorp, L.L.C., and Dolgencorp, Inc. ("Dolgencorp") loaded a trailer for Baird to drive and deliver to the Dollar General store at 8 Lincoln Center, owned by Lincoln County Shopping Center (LCSC) in Troy, Missouri.

(Id. at ¶¶ 6-7.)  Upon arriving at the store, Baird saw that the loading area was poorly lit and that the light fixture on the outside rear wall of the store was missing its bulb.  (Id. at ¶ 9.)  He entered the store to ask a store employee about additional lighting.  The store employee said that none was available.  (Id.)  While Baird called his dispatcher about the lighting issue, the store employee broke the security seal on the trailer.  (Id.)  When the security seal on a truck is broken, the driver is required to unload it.  So, Baird began unloading his trailer (id.), first by removing paper product from the tops of some containers.  (Id. at ¶ 10.)  Unknown to Baird due to the poor lighting, Dolgencorp had placed a box of eight one-half gallon containers of liquid on top of the paper product; the containers of liquid tumbled onto his head and caused him to fall and lose consciousness.  (Id. at ¶¶ 8,10.)  The box weighed between thirty and forty pounds.  (Id. at ¶ 8.)

Gregory Baird claims that the conduct of defendants Dolgencorp and LCSC constituted actionable negligence. He seeks compensatory damages for physical injury to his head, brain, neck, and back, medical expenses, lost wages, and diminished earning capacity.  (Id. at ¶¶ 18-19.)  His wife, Michelle, seeks compensation for the loss of her husband's "support, services, society, consortium, love, and affection."  (Id. at ¶¶ 15-26.)   On April 17, 2012, plaintiffs dismissed their claims against LCSC.  (Docs. 40, 42.)

On May 2, 2012, Dolgencorp filed a crossclaim against LCSC, alleging  Baird failed to see the box on top of paper product due to poor lighting caused by LCSC's negligent failure to replace the light bulb in the fixture outside the rear of the store. (Doc. 43 at ¶ 14.)  Dolgencorp alleges that on  May 23, 1994, it entered into a written lease to operate the subject store on premises owned by LCSC.  The lease defined "Common Area" as any portion of land not covered by buildings, and LCSC agreed to maintain lighting in the Common Area.  Dolgencorp alleges LCSC further agreed to defend and indemnify it for claims arising from an unsafe condition on the premises caused by LCSC's failure to fulfill its duty to maintain.   Dolgencorp tendered its defense and indemnity to LCSC, but LCSC refused to accept.

Dolgencorp seeks from LCSC common law contribution based upon its negligence and contractual indemnity for the claims alleged by plaintiffs. Dolgencorp also claims breach of contract, seeking actual damages that include reimbursement for damages awarded to plaintiffs and attorney fees and costs incurred by Dolgencorp in defending plaintiffs' suit.

By its original and amended answers and counterclaims against Dolgencorp, LCSC alleges that Dolgencorp's negligence caused Baird's injury. LCSC also alleges that Dolgencorp agreed to defend and indemnify it for claims arising from an unsafe condition on the premises caused by Dolgencorp's failure to fulfill its duty to maintain. LCSC further alleges that it tendered its defense and indemnity to Dolgencorp, but Dolgencorp refused to accept. LCSC claims contribution, contractual indemnity, and breach of contract, seeking actual damages that include reimbursement for damages awarded to plaintiffs and attorney fees and costs incurred in defending plaintiffs' suit.

## II. MOTION FOR SUMMARY JUDGMENT

In its motion for partial summary judgment, Dolgencorp seeks a declaration by the court that LCSC had a duty under the lease agreement to maintain the lighting in the area where Gregory Baird's injury occurred. (Doc. 85 at 3.) Dolgencorp argues that the centerpiece of the dispute between Dolgencorp and LCSC is the interpretation of Sections V and XXVII of their lease agreement. Dolgencorp argues that Section V defines "Common Area" as any tract of land owned by LCSC that is not covered by buildings, and that Section XXVII assigns the duty to maintain the lighting of the Common Area to LCSC. Dolgencorp argues that, because the lease agreement is unambiguous, the plain language of the lease govern the rights and duties of the parties. Dolgencorp concludes that the lease agreement required LCSC to maintain the lighting outside the Dollar General store, and that LCSC's failure to fulfill that duty caused plaintiffs' damages.

LCSC argues that the physical area of Gregory Baird's injury was an "appurtenance" to the property leased rather than part of the "Common Area" defined by the lease. LCSC argues that this interpretation of the lease renders it ambiguous and creates a question of fact for a jury. Alternatively, LCSC argues that the parties' course of performance renders the lease agreement ambiguous.

## III. STATEMENT OF UNDISPUTED FACTS

From the record, the court concludes that the following facts are not reasonably disputed. At all times relevant, LCSC owned the 8 Lincoln Center location, which includes the Dollar General store premises. (Doc. 87-2 at 5.) On May 23, 1994, LCSC leased the Dollar General store premises

- 3 -

to Dolgencorp for five years with an option to extend the lease for three years. (Id.) On March 20, 2002, the parties extended the lease to November 30, 2007. (Id. at 1.) Plaintiffs allege Gregory Baird was injured on November 23, 2007.

Section I of the lease agreement defines the area leased to Dolgencorp as

a storeroom which is 7316 square feet, inside dimensions (the "demised premises"), located in and a part of Lincoln County Shopping Center, which entire Shopping Center is shown on the Plot Plan attached hereto as Exhibit "B" and made a part hereof, with the demised premises being outlined in red thereon **together with each and every appurtenance thereto**, which Shopping Center in located at 8 Lincoln Center, in the City of Troy, County of Lincoln, and State of Missouri, 63379.

(Id. at 5)(bolding added).

Section V defines the term "Common Area" and delegates the duty to maintain the Common Area:

The entire tract of land on which Lessor has constructed the Shopping Center is shown on the plot plan attached to and made a part hereof. All that portion of the tract of land not covered by buildings is to be Common Area for the joint use of all tenants, customers, invitees, and employees, except those areas which lessor may choose to construct buildings or lease to tenants in the future. . . . Lessor agrees, at its own expense (subject to the provisions of Paragraph XXVIII-C), to maintain all Common Area in good repair, to keep such area reasonably clean, to remove reasonable amounts of snow and ice therefrom, **to keep such area lighted during hours of darkness when the demised premises are open for business** and to keep the parking area properly striped to assist in the orderly parking of cars. Unless caused by the negligence of Lessee, its agents, employees, or contractors, any claims for damage to property, and any claim arising from or out of the injury or death of any person while on the Common Area shall be the responsibility of Lessor . . . .

(Id. at 7-8) (bolding added).

Section VI defines and delegates the duty to maintain the premises. It states:

Lessor shall maintain at its cost and expense in good condition and shall perform all necessary maintenance, repair, and replacement to the exterior of the premises including, but not limited to, the roof, all paved areas, foundation, structural floors, walls, exterior utility lines and pipes, and all other structural portions of the building during the term of this Lease and any renewal periods. . . . Lessee shall maintain the interior of the premises (subject to the provisions of Paragraph VII) including but not limited to heating, ventilating, and air conditioning systems, ceiling, floor coverings, lighting, interior non-structural walls, all interior fixtures, doors, and above ground

and interior plumbing repairs during the term of this lease and any renewal periods . . . .
(Id. at 8-10.)

Section XXVIII, Paragraph C states that Dolgencorp is obligated to pay LCSC a proportionate share of the "actual cost of care, maintenance, and repair on the Common Area." (Id. at 24.) The pertinent portion of Section XXVIII, Paragraph C, states that "care and maintenance shall include but not be limited to lighting, cleaning, security, snow removal, and striping." (Id.)

The fixture without a light bulb that caused the poor lighting of the loading area was attached to the exterior of the building near the receiving door. The switch that controlled that light was inside the store. (Doc. 91-1 at 5.) LCSC regularly maintained canopy lights and parking lot lights in front of the store, but had never maintained the lights behind the store. (Doc. 91-1 at 4; Doc. 91-2 at 4.) On one occasion, a Dolgen store employee, who began working for Dolgencorp in 2011, replaced the light bulb on the fixture at issue. (Doc. 91-3 at 4.)

## IV. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings or general denials of the movant's assertions, but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(e);

Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003); Essex Ins. Co. v. Stone, 2010 WL 330328, *2 (E.D. Mo. 2010).

## V. DISCUSSION

Dolgencorp argues that LCSC had a duty under the lease agreement to maintain the lighting where Gregory Baird's injury occurred. Dolgencorp argues that the lease agreement is unambiguous and should be interpreted according to its plain meaning. LCSC argues the lease is ambiguous.

The interpretation of a contract is a question of law for the court to decide, not a question for the jury. Four Seasons Lakesites, Inc. v. HRS Properties, Inc., 317 S.W.3d 193, 200 (Mo. Ct. App. 2010). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Id. To ascertain the intent of the parties, "the terms of the contract are read as a whole and given their plain, ordinary, and usual meaning." Id. Unless contracts are ambiguous, extrinsic evidence cannot be used for their interpretation. Sonoma Mgmt. Co., Inc. v. Boessen, 70 S.W.3d 475, 479 (Mo. Ct. App. 2002). "A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain." Id.

The relevant terms of the lease agreement in this case are not ambiguous. The agreement defines the leased area as a 7316 square foot storeroom in the Lincoln County Shopping Center "together with each and every appurtenance thereto . . ." (Doc. 87-2 at 5.) The agreement defines "Common Area" as "[a]ll that portion of the tract of land not covered by buildings is to be Common Area" and delegates the duty to maintain the Common Area to LCSC, including keeping "such areas lighted during hours of darkness when the demised premises are open for business . . ." (Id. at 7-8.) The agreement also divides the duty to maintain the building by delegating the duty to maintain the exterior of the premises to LCSC and delegating the duty to maintain the interior of the premises to Dolgencorp. (Id. at 8-10.) The agreement expressly states that maintenance of the Common Area included lighting. (Id. at 24.)

The light fixture was attached to the exterior of the building near the receiving door, adjacent to the Common Area. Because of the location of the light fixture, the duty to maintain the exterior of the building included the duty to maintain the light fixture. Alternatively, because the light fixture

was adjacent to the Common Area, its maintenance is relevant to the lighting of the Common Area. Relying on either clause, LCSC had a duty under the lease agreement to maintain the light fixture or otherwise provide for lighting the Common Area..

LCSC argues that admission of extrinsic evidence should be permitted due to a latent ambiguity. A latent ambiguity arises where a writing is facially unambiguous, but a collateral matter makes the meaning uncertain. Royal Banks of Missouri v. Fridkin, 819 S.W.2d 359, 362 (Mo. 1991). LCSC contends that the fact the place of plaintiff Gregory Baird's injury was an appurtenance to the defined "demised premises" causes ambiguity in the lease agreement. The court disagrees.

"Appurtenance" is not defined by the lease agreement. Missouri courts have defined appurtenances as "things belonging to another thing as principal, and which pass as incident to the principal thing" and "things used with and related to or dependent upon something else which is its principal." Joplin Waterworks Co. v. Jasper County, 38 S.W.2d 1068, 1076 (Mo. 1931). The word "appurtenance" is used in the definition of the area leased to Dolgencorp. (Doc. 87-2 at 5.) Even assuming that the place of injury was an appurtenance to the leased premises, this means only that the injury occurred on property leased to Dolgencorp. This fact does not establish a duty to maintain or light this area.

Gregory Baird alleges that his injury occurred outside of the Dollar General store but on the premises of the Lincoln County Shopping Center. (Doc. 1.) The lease agreement defines the place of his injury as the Common Area. (Doc. 87-2 at 7-8.) In the lease agreement, LCSC granted an easement to Dolgencorp for the use of the Common Area. (Id.) "In the absence of an agreement to the contrary, the owner of the easement is responsible for keeping the property in repair and is liable for any injury resulting from the failure to repair." Kibbons v. Union Elec. Co., 823 S.W.2d 485, 488 (Mo. 1992). Although, absent an agreement, the duty to maintain the Common Area might belong to Dolgencorp, LCSC agreed by its lease to maintain the Common Area. The lease agreement expressly addresses the duty to maintain the Common Area, and the location of Baird's injury as an appurtenance to the leased premises does not alter the duty to maintain the area or create an ambiguity in the language of the lease.

LCSC also argues that the parties' course of performance of the lease agreement modified the duty to repair the light fixture. In some instances, the parties' course of performance can modify the terms of an agreement. Cf. Mo. Rev. Stat. § 400.2-208. However, under Missouri law, any agreement concerning a lease term longer than one year falls under the statute of frauds and must be in writing. Mo. Rev. Stat. § 432.010. The writing requirement also extends to modifications of agreements that fall under the statute of frauds. Melson v. Traxler, 356 S.W.3d 264, 273 (Mo. Ct. App. 2011). Here, the agreement concerns a lease term longer than one year. (Doc. 87-2 at 1, 5.) Therefore, LCSC's argument that course of performance modified the lease agreement is without merit.

## ORDER

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants Dolgencorp, L.L.C., and Dolgencorp, Inc. for partial summary judgment (Doc. 85) is sustained, in that LCSC had a duty under the lease agreement to maintain the lighting in the area where Gregory Baird's alleged injury occurred. This conclusion does not resolve the allegations of negligence made by Dolgencorp and LCSC against each other.

　　　　　　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　　　　　
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on December 4, 2012.